REQUESTED BY: Senator Gene Tyson Nebraska State Legislature
Neb. Rev. Stat. §§ 86-401 through 86-419 (Cum. Supp. 2002) constitute the Nebraska Public Safety Wireless Communication System Act (the "Act"). That Act permits the creation of two separate joint entities under the Nebraska Interlocal Cooperation Act to implement a statewide public safety communications system.[1] Those two joint entities include an "Acquisition Agency" and an "Alliance." Under § 86-410(1), the purpose of the Acquisition Agency is to acquire real and personal property for use in connection with a public safety communications system, and to construct any facilities necessary to implement such a system. Under § 86-410(2), the purpose of the Alliance is to operate, maintain and manage a statewide public safety communications system. Both of those joint entities may include public safety agencies from the State, cities and villages, counties, and other political subdivisions in Nebraska as participants. Apparently, an Acquisition Agency and an Alliance involving the State and various political subdivisions have now been created under the Act to carry out its provisions.
[1] The Interlocal Cooperation Act may be found at Neb. Rev. Stat. §§ 13-801 through 13-827 (1997, Cum. Supp. 2002).
The Act was extensively amended in 2002 by LB 1105 and LB 1211. 2002 Neb. Laws LB 1105; 2002 Neb. Laws LB 1211. In your opinion request, you state:
 As one of the co-introducers of LB 1211, it concerns me that further legislation might be necessary by amendment this session. I am not aware of any requirement to force the executive board of the "alliance" to issue an RPF (sic). However, some members of the executive board of the "alliance" are concerned that the board may not have the statutory authority to freely negotiate terms and conditions with one or both of the companies which submitted bids to the state [for creation of a statewide public safety communications system] prior to passage of LB 1211. Both bids were rejected by the state.
It is my understanding that several members of the executive board of the "alliance" would like to begin negotiations with one or both companies. The executive board would be assisted by a consultant and project manager previously hired by the executive board. At a minimum, this would avoid the costly and time-consuming process of issuing another RFP.
In that context, you have posed the following question to us:
 Is the executive board of the "alliance" required by any law to issue another RFP or does it have the authority to begin negotiation with one or both companies, subject to whatever terms and conditions to which the party or parties may agree?
We understand your use of the term "RFP" to refer to the "Request For Proposal" which is used by many state agencies as an initial part of the process for competitive bidding on public purchases. As a result, it appears that you have asked us whether the Alliance in this case is required to engage in a competitive bidding process to perform its duties regarding creation of a statewide public safety communications system.
We received your opinion request on the afternoon of April 7, 2003, and you have asked us to complete our response to your request by the close of the day on April 9, 2003. While we will accommodate your need for an expedited response, we will also point out that the time frame you have allowed us leaves us little opportunity for research regarding the question you presented. In addition, our response will necessarily be brief.
Under common law, and generally, there is no requirement that public contracts be let by competitive bidding in the absence of a statutory provision requiring such a bidding process. 72 C.J.S. Supp. Public Contracts § 8. In that regard, competitive bidding is not an essential prerequisite to the validity of contracts with public bodies, and the government has the unrestricted power to determine with whom it will deal, and to fix the terms and conditions upon which it will make purchases. Id. However, even in those instances where a public body has no duty to require bids in letting public contracts, it must act in the public interest, and must be fair, honest, and exercise a wise discretion in the awarding of public contracts. 72 C.J.S. Supp. Public Contracts § 7. Consequently, it seems to us that the Alliance in the present instance must engage in a competitive bidding process and issue a new RFP as described in your letter only if there are Nebraska statutes which require it to do so. In the absence of such statutes, the executive board of the Alliance may freely negotiate terms and conditions with one or both of the companies which earlier submitted bids to the state, or with others.
We have reviewed the Nebraska Public Safety Wireless Communication System Act and the Nebraska Interlocal Cooperation Act, and we have found nothing in those statutes which specifically requires competitive bidding with respect to the duties of either the Acquisition Agency or the Alliance.[2] Section 13-804(5) of the Interlocal Cooperation Act does provide that no agreement under that Act will relieve any public agency of an obligation or responsibility imposed upon it by law, except to the extent that such an obligation is performed by the joint entity created under the Act. That statute could be used as the basis for an argument that the Alliance is subject to any bidding requirements imposed upon its participants under their own statutes, and we have indicated previously that a joint body formed by counties under the Interlocal Cooperation Act must publish its proceedings and claims allowed because individual counties were required to do so. Op. Att'y Gen. No. 152 (October 23, 1983). However, it appears to us that § 13-804(5) is inapplicable to the circumstances surrounding your question because the authority of the Alliance to engage in its activities grows out of Nebraska Public Safety Wireless Communication System Act itself, and not out of the particular statutes pertinent to each of the individual participants in the Alliance.
We would also note that the provisions of the Nebraska Joint Public Agency Act, Neb. Rev. Stat. §§ 13-2501 to 13-2550 (Cum. Supp. 2002), contain a specific requirement regarding the bidding procedures which must be used by joint public agencies organized under that act. Neb. Rev. Stat. § 13-2526 (Cum. Supp. 2002). The fact that the Legislature chose to specifically impose bidding procedures on joint public agencies formed under the Joint Public Agency Act, but did not chose to do so for joint entities formed under Nebraska Interlocal Cooperation Act, supports the notion that competitive bidding is not required under the latter statutes.
In sum, we do not believe that the executive board of the Alliance is required by any law to issue another RFP in this case or to engage in competitive bidding as it goes about its duties. However, the board could still choose to use a competitive bidding process, if board members for the Alliance believe that such a process is proper policy under the circumstances in this case.
Sincerely yours,
 JON BRUNING Attorney General
 Dale A. Comer Assistant Attorney General
Approved by:
____________________________ Attorney General
cc. Patrick J. O'Donnell Clerk of the Legislature
[2] We indicated earlier in an informal opinion that, in our view, the Alliance is a governmental subdivision separate and apart from the State. Therefore, we have not reviewed any statutes pertaining to the bidding requirements placed upon state agencies, because we do not believe that those statutes have application to the Alliance.